## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| DYNACAP LLC, | |
| **Plaintiff,** | **Civil Action No. 1:25-1768** |
| v. | **Jury Trial Demanded** |
| APPLE INC., STMICROELECTRONICS N.V., AND STMICROELECTRONICS, INC., | |
| **Defendants.** | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff DynaCap LLC ("DynaCap" or "Plaintiff") hereby files its Original Complaint against Defendants Apple Inc. ("Apple"), STMicroelectronics N.V., and STMicroelectronics Inc., (collectively, "STMicro" and collectively with Apple, "Defendants") alleging infringement of U.S. Patent Nos. 6,813,138; 6,969,912; and 7,035,082 (collectively the "Patents-in-Suit").

### I.    PARTIES

1.    Plaintiff DynaCap LLC is a Texas limited liability company.

2.    Upon information and belief, Apple is a California corporation with places of business at its two Austin campuses located at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W. Parmer Lane, Austin, Texas 78729. Apple is registered to do business in the State of Texas and may be served through its registered agent C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

3.    Upon information and belief, Defendant STMicroelectronics N.V. is incorporated in the Netherlands with its legal address of WTC Schiphol Airport, Schiphol Boulevard 265, 1118 BH Schiphol, Netherlands and a headquarters located in Switzerland at 39 Chemin du Champ-des

Filles, Plan-les-Ouates, Geneva 1228, Switzerland.

4.    Upon information and belief, Defendant STMicroelectronics, Inc. is a Delaware corporation with places of business at 11809 Domain Drive, Suite 300, Austin, Texas 78758; 8501 North Mo-Pac Expressway Suite 420, Austin, TX 78757; and 750 Canyon Drive, Suite 300, Coppell, Texas 75019. On information and belief, STMicroelectronics, Inc. is a wholly owned subsidiary of STMicroelectronics N.V. STMicroelectronics, Inc. is registered to do business in the State of Texas and may be served through its registered agent CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

## II.    JURISDICTION AND VENUE

5.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.

6.    This is an action for patent infringement which arises under the Patent Laws of the United States, in particular 35 U.S.C. §§ 271, 281, 284 and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331, §1338(a).

7.    Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400. Defendants maintain regular and established places of business within this District. On information and belief, Defendants have transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing products that infringe Plaintiff's patents as set forth below.

8.    This Court has personal jurisdiction over Defendants consistent with the Texas Long Arm Statute and the Due Process Clause of the Fourteenth Amendment. Among other reasons, Defendants maintain regular and established places of business in Texas. Defendants conduct substantial business in Texas and have established minimum contacts within the forum

ORIGINAL COMPLAINT

such that the exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice. Defendants have purposefully and voluntarily availed themselves of the privileges of conducting business in the United States, the State of Texas, and this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in the State of Texas and this District. Defendants directly and/or through intermediaries (including distributors, sales agents, and others), ship, distribute, sell, offer to sell, import, advertise, make, and/or use their products (including but not limited to the products accused of infringement herein) in the United States, the State of Texas, and this District. Finally, Defendants have participated in many lawsuits in courts within the State of Texas, including this Court. As such, it has long been established that Defendants are subject to personal jurisdiction in Texas. Plaintiff's causes of action arise from Defendants' contacts with and other activities in the State of Texas and this District.

APPLE

9.      On information and belief, Apple maintains many regular and established places of business within the Western District of Texas including: (1) its two Austin campuses located at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W Parmer Lane, Austin, Texas 78729; (2) a technical and engineering center at 320 S. Capital of Texas Hwy, West Lake Hills, Texas 78746; and (3) several retail stores, including ones at located at (a) 3121 Palm Way, Austin, Texas 78758; (b) 2901 S. Capital of Texas Highway, Austin, Texas 78746; (c) 15900 La Cantera Parkway, San Antonio, Texas 78256; (d) 7400 San Pedro Avenue, San Antonio, Texas 78216; and (e) 8401 Gateway Boulevard West, El Paso, Texas 79925.

10.      According to an Apple news release from 2019, Apple had 7,000 employees in Austin and its campus located at 6900 W Parmer Lane was planned to house 5,000 employees as

ORIGINAL COMPLAINT

of 2022 and have the capacity to grow to 15,000 employees. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited October 31, 2025). Apple's Austin campus is part of a master-planned, $1 billion development and is believed to be Apple's largest campus by size and second largest by number of employees. https://www.apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/ (last visited October 31, 2025). On information and belief, Apple has continued to increase its presence in Austin and this District through 2025.

11.    Apple employs hundreds of engineers in Austin, Texas, whose job responsibilities concern accused products like the identified models of the iPhone.

12.    On information and belief, Apple develops, makes, uses, imports, offers for sale, and/or sells in Texas and the Western District of Texas devices, such as certain models of the iPhone and iPad, that are accused of infringing the Patents-in-Suit.

13.    As shown by recent Apple job postings, Apple employs hardware engineers in Austin, Texas, who work on accused products such as iPhones. As of October 31, 2025, Apple listed 231 results on their website for roles in Austin, Texas pertaining to iPhones, including roles focused on PCB, circuit, and SoC design. *See* https://jobs.apple.com/en-us/search?location=austin-metro-area-AUSMETRO&product=iphone-IPHN (last visited October 31, 2025). Additionally, as of October 31, 2025, Apple listed 229 results on their website for roles in Austin, Texas pertaining to iPads, including roles focused on PCB, circuit, and SoC design. *See* https://jobs.apple.com/en-us/search?location=austin-metro-area-AUSMETRO&product=ipad-IPAD&+product=ipad-IPAD (last visited October 31, 2025).

14.    Relevant third-party witnesses are also located in this District, including for example, Samsung Austin Semiconductor located at 12100 Samsung Blvd, Austin, TX 78754,

ORIGINAL COMPLAINT

(https://semiconductor.samsung.com/sas/company/austin/), who has a large fabrication facility that upon information and belief has produced infringing components used in the accused products.

15.    The Western District of Texas has previously been established as a proper venue for patent infringement actions against Apple. As one example, in *Carbyne Biometrics, LLC v. Apple Inc.*, No. 1:23-cv-00324-ADA, Dkt. 84 (W.D. Tex. Feb. 12, 2024), the Court denied Apple's motion to transfer the patent infringement case to the Northern District of California and the Federal Circuit upheld this decision by denying Apple's petition for a writ of mandamus seeking to reverse this Court's ruling. *See In re Apple Inc.*, No. 2024-111, 2024 WL 1153977 (Fed. Cir. Mar. 18, 2024). For substantially the same reasoning and facts as in the *Carbyne* litigation, the Western District of Texas is also the proper venue for DynaCap's action against Apple here.

STMICRO

16.    On information and belief, STMicro maintains regular and established places of business within the Western District of Texas including 11809 Domain Drive, Suite 300, Austin,78758, Texas and 8501 North Mo-Pac Expressway Suite 420, Austin, TX 78757.

17.    STMicro also identifies several distributors in Austin, Texas on its website, including: Avnet, 12211 Technology Blvd., Austin, Texas 78727; Future Electronics, 8310-1 North Capitol of Texas Hwy, Austin, Texas 78731; Asia One Components USA, Texas, 5900 Balcones Drive, Suite 16003, Austin, Texas 78731; and Arrow, 9233 Waterford Centre Blvd, Austin, Texas, 78758.   *See* https://www.st.com/content/st_com/en/contact-us.html (last visited October 31, 2025).

## III.  JOINDER

18.    Joinder of Defendants is proper under 35 U.S.C. § 299. Allegations of patent infringement contained herein arise out of the same series of transactions or occurrences relating

**ORIGINAL COMPLAINT**

5

to the making (or having made), using (or inducing the use of), selling, or offering for sale within the United States, or importing (or having imported) into the United States, several of the same infringing products, including, e.g. Apple's iPhone 6 Plus incorporating sensors fabricated and/or supplied by STMicro, such as micro-electromechanical systems ("MEMS") microphones (e.g. STMicro's part no. MP45DT01) and the Apple iPhone 5's incorporation of certain accelerometers (e.g. STMicro's part no. LIS331DLH).

19.    Therefore, Defendants' products, on information and belief, contain and/or consist of integrated circuits that included embedded microelectronic capacitors fabricated and/or supplied by STMicro and incorporated by Apple into Apple downstream products, and are designed, made, used, sold, offered for sale, and/or imported in this judicial District.

## IV.    FACTUAL BACKGROUND

### Patents-in-Suit

20.    The Patents-in-Suit resulted from research conducted by the Industrial Technology Research Institute ("ITRI"). Founded in 1973 and headquartered in Taiwan with branches in the United States, Japan, and Europe, ITRI is a renowned non-profit technology research and development institution. ITRI has been instrumental in the growth of top semiconductor companies. Two of the largest foundries in the world, Taiwan Semiconductor Manufacturing Company ("TMSC") and United Microelectronics Corporation ("UMC"), were also spun off from ITRI.

21.    DynaCap is the owner of all right, title, and interest in and to U.S. Patent No. 6,813,138, entitled "Embedded Microelectronic Capacitor Equipped with Geometrically-Centered Electrodes and Method of Fabrication," (the "'138 patent"), filed in the United States on April 30, 2003. The '138 patent duly and legally issued on November 2, 2004. A true and correct copy of the '138 Patent is attached hereto as Exhibit 1 and is incorporated by reference.

22.     DynaCap is the owner of all right, title, and interest in and to U.S. Patent No. 6,969,912, entitled "Embedded Microelectronic Capacitor Incorporating Ground Shielding Layers and Method for Fabrication," (the "'912 patent"), filed in the United States on November 14, 2003. The '912 patent duly and legally issued on November 29, 2005. A true and correct copy of the '912 patent is attached hereto as Exhibit 2 and is incorporated by reference.

23.     DynaCap is the owner of all right, title, and interest in and to U.S. Patent No. 7,035,082, entitled "Structure of Multi-Electrode Capacitor and Method for Manufacturing Process of the Same," (the "'082 patent") claiming priority to Taiwanese Application 93101289 filed January 16, 2004. The '082 patent duly and legally issued on April 25, 2006. A true and correct copy of the '082 patent is attached hereto as Exhibit 3 and is incorporated by reference.

24.     The Patents-in-Suit have expired. The "Period of Exclusivity" runs from the period of enforceability until the latest expiration of the Patents-in-Suit.

T̲E̲C̲H̲N̲I̲C̲A̲L̲ ̲O̲V̲E̲R̲V̲I̲E̲W̲

25.     The '138 patent is generally directed to a three-plate embedded capacitor with a specific physical configuration of a via relative to certain electrode plates. The inventions claimed by the '138 patent sought to address issues with prior art techniques and structures used to make connections between embedded capacitors and other circuit components. For example, prior art techniques like "edge connection" required a larger amount of circuit real estate and frequently produced parasitic effects that harmed the electrical characteristics of the capacitor. *See* '138 patent, 1:27-65.  The inventions claimed by the '138 patent sought to address these problems in the prior art by providing a connection point for embedded capacitors that was closer to the geometric center of the electrode plate; such a connection location would improve the high frequency electrical characteristics of the embedded capacitor and simplify the connection of the

capacitor to surrounding elements. *See id.*, 2:12-25, 4:35-42.  Figure 4B (below) illustrates "an enlarged, cross-sectional view of a present invention single-port, dual layer embedded capacitor."



*Figure 4B*

'138 patent, 3:53-55.

26.    The '912 patent is also generally directed to embedded microelectronic capacitors and its claims focus on a particular configuration of ground shielding layers and a method for manufacturing the same. Prior art configurations of embedded capacitors suffered from "undesirable parasitic effect produced in-between the embedded element" as a result of the "ever-decreasing distances between the embedded elements" in modern microelectronic fabrication. '912 patent, 2:17-20. The inventions claimed by the '912 patent sought to address these problems in the prior art by "incorporate[ing] ground shielding layers in the capacitor structure for maintaining signal integrity and reducing cross-talk" between embedded elements. *Id.*, 2:30-34.  For example, Figure 5B of the '912 patent (below) shows an "enlarged, cross-sectional views illustrating the present invention embedded microelectronic capacitor equipped with an upper ground shielding layer, a middle ground shielding layer and a bottom ground shielding layer."



*Figure 5B*

'912 patent, 4:33-37.

27.    The '082 patent is also directed to microelectronic capacitors, and its focus is generally on utilizing, for example, an "edge-coupled effect from a plurality of metal laminates forming the multi-electrode capacitor to provide efficient capacitance in the limited-area within the PCB" in order to provide advancements related to decoupling. '082 patent, 2:40-44. Figure 5D of the '082 patent "is a schematic drawing of the multi-layer plates of the invention."



FIG. 5D

'082 patent, 3:14-15.

<u>**APPLE'S ACTS**</u>

28.    Apple has manufactured, used, sold, offered to sell, and imported into the United States certain models of its iPhone smartphones and iPad tablet computers during the Period of Exclusivity that utilize embedded microelectronic capacitors with the particular architecture of layers, plates, vias, and ground shielding layers described in the various claims of the Patents-in-Suit ("Accused Apple Products"), including, but not limited to, the iPhone 5, iPhone 6 Plus, iPhone XR, iPhone 12 Pro, iPad (5th generation), iPad (8th generation), iPad Mini 4, and iPad Mini (5th generation) and all other products with substantially similar embedded capacitor architectures. The Accused Apple Products meet all claim limitations of and infringe at least claim 1 of the '138 patent, at least claim 1 of the '912 patent, and at least claim 5 of the '082 patent.

**<u>Apple's Infringement of the '138 Patent</u>**

29.    Claim 1 of the '138 patent recites the following:

1. An embedded microelectronic capacitor comprising:

an upper electrode plate of a first polarity;

a middle electrode plate of a second polarity opposite to said first polarity of said upper electrode plate having an aperture therethrough;

at least one lower electrode plate of said first polarity in electrical communication with said upper electrode plate through a via positioned through said center aperture of said middle electrode plate without shorting to said middle electrode plate, said via being positioned at a distance from a geometric center of said middle electrode plate of not larger than 50% of a diameter of said middle electrode plate; and

a first electrical lead connected to an edge portion of said upper electrode plate wherein said upper electrode plate, said middle electrode plate and said at least one lower electrode plate are embedded parallel to each other in at least one dielectric material forming at least a single-port capacitor.

30.    An analysis of the wide-angle camera sensor included in Apple's iPhone 12 Pro, specifically in the context of what is labeled in the images as "Capacitor 2," indicates that the

Accused Apple Products utilize embedded microelectronic capacitors comprising an upper electrode plate of a first polarity (e.g. L3' in the images below).









31.     Additionally, the analysis indicates that the Accused Apple Products include a middle electrode plate of a second polarity opposite to the polarity of the upper electrode plate (e.g. L4' in the image below) having an aperture therethrough.



32.    The embedded microelectronic capacitors of the Accused Apple Products further include at least one lower electrode plate of the first polarity (e.g. L5' in the image below) that is in electrical communication with the upper electrode plate (e.g. L3') through a via positioned (e.g. V1 or V2) through the center aperture of the middle electrode plate (e.g. A1 or A2) without shorting to the middle electrode plate (e.g. L4'). The via is positioned at a distance from a geometric center of the middle electrode plate that is not larger than 50% of a diameter of the middle electrode plate.





33.    The embedded microelectronic capacitors of the Accused Apple Products also include a first electrical lead connected to an edge portion of the upper electrode plate. The upper electrode plate, the middle electrode plate and the at least one lower electrode plate are embedded parallel to each other in at least one dielectric material (e,g, the black area indicated in the image below) forming at least a single-port capacitor.



**Apple's Infringement of the '912 Patent**

34.    Claim 1 of the '912 patent recites the following:

1. An embedded microelectronic capacitor incorporating ground shielding layers comprising:

an upper ground shielding layer having an aperture therethrough;

an electrode plate positioned spaced-apart from said upper ground shielding layer having a via extending upwardly away from said electrode plate through said aperture in said upper ground shielding layer providing electrical communication to said electrode plate without shorting to said upper ground shielding layer;

a middle ground shielding layer positioned in the same plane of said electrode plate and surrounding while spaced-apart from said electrode plate at a predetermined distance; and

a dielectric material embedding said upper ground shielding layer and said middle ground shielding layer.

35.    An analysis of the wide-angle camera sensor included in Apple's iPhone 12 Pro, specifically in the context of what is labeled in the images as "Capacitor 2," also indicates that the Accused Apple Products utilize embedded microelectronic capacitors that have an upper ground shielding layer with an aperture therethrough (e.g. L4' in the images below).





36.    The embedded microelectronic capacitors of the Accused Apple Products also include an electrode plate spaced-apart from the upper ground shielding layer with a via (e.g. V1 or V2) extending upwardly away from the electrode plate through the aperture in the upper ground shielding layer (e.g. L4') providing electrical communication to the electrode plate without shorting to the upper ground shielding layer.





37.    A middle ground shielding layer positioned in the same plane of the electrode plate surrounding while spaced-apart from the electrode plate at a predetermined distance is also found in the embedded microelectronic capacitors of the Accused Apple Products.

ORIGINAL COMPLAINT

17



38.    Finally, the embedded microelectronic capacitors of the Accused Apple Products include a dielectric material embedding the upper ground shielding layer and the middle ground shielding layer.



**Apple's Infringement of the '082 Patent**

39.    Claim 5 of the '082 patent recites the following:

5. A multi-electrode capacitor, comprising:

a plurality of conducting layers forming a plurality of multi-electrode plates, separated by spaces at an interval within; and

a plurality of vias connecting with said conducting layers and a plurality of surface-mounted devices;

wherein one or a plurality of junction points of said vias are located at an intersection of said spaces within said plates.

40.    An analysis of the wide-angle camera sensor included in Apple's iPhone 12 Pro, specifically in the context of what is labeled in the images as "Capacitor 1," also indicates that the Accused Apple Products utilize multi-electrode capacitors comprising multiple conducting layers

(e.g. L2 – L6 in the image below) forming a plurality multi-electrode plates, separated by spaces at an interval within.



41.     The multi-electrode capacitors of the Accused Apple Products also evidence a plurality of vias connecting with the conducting layers (e.g. from L5 to L2) and a plurality of surface-mounted devices (e.g. surface mounted devices on L2).







42.    Further, one or a plurality of junction points of the vias are located at an intersection

of the spaces within the plates (e.g. as indicated in the images below).



**STMICRO'S ACTS**

43.    STMicro has manufactured, used, sold, offered to sell, and imported into the United States a variety of MEMS sensors during the Period of Exclusivity that utilize embedded microelectronic capacitors with the particular architecture of layers, plates, vias, and ground shielding layers described in the various claims of the Patents-in-Suit ("Accused STMicro Products"), including, but not limited to, microphones (e.g. part no. MP45DT01); gyroscopes (e.g. part no. A3G4250D); accelerometers (e.g. part nos. LIS331DLH, H3LIS331DL, IIS2DH, and MIS2DH); eCompasses (e.g. part nos. LIS2MDL and LSM303AGR); iNEMO-inertial modules (e.g. part nos. LSM6DSL and LSM6DSM); and all other products with substantially similar embedded capacitor architectures. The Accused STMicro Products meet all claim limitations of and infringe at least claim 1 of the '138 patent, at least claim 1 of the '912 patent, and at least claim 5 of the '082 patent.

**STMicro's Infringement of the '138 Patent**

44.    An analysis of an STMicro MEMS microphone sensor (part no. MP45DT01), which was included in this instance in an Apple iPhone 6 Plus, indicates that the Accused STMicro

Products utilize embedded microelectronic capacitors comprising an upper electrode plate of a first polarity (e.g. layer 2 in the images below).















There are at least 4 metal
layers under the ASIC
layer.









45.    Additionally, the analysis indicates that the Accused STMicro Products include a middle electrode plate of a second polarity opposite to the polarity of the upper electrode plate (e.g. layer 3 in the images below) having an aperture therethrough.



46.    The embedded microelectronic capacitors of the Accused STMicro Products further include at least one lower electrode plate of the first polarity (e.g. layer 4 in the image below) that is in electrical communication with the upper electrode plate (e.g. layer 2) through a via (e.g. Vg) positioned through the center aperture of the middle electrode plate without shorting to the middle electrode plate (e.g. layer 3). The via is positioned at a distance from a geometric center of the middle electrode plate that is not larger than 50% of a diameter of the middle electrode plate.





47.     The embedded microelectronic capacitors of the Accused STMicro Products also include a first electrical lead connected to an edge portion of the upper electrode plate. The upper electrode plate, the middle electrode plate, and the at least one lower electrode plate are embedded parallel to each other in at least one dielectric material (e.g. the black area indicated in the image below) forming at least a single-port capacitor.







**STMicro's Infringement of the '912 Patent**

48.    The Accused STMicro Products utilize embedded microelectronic capacitors that have an upper ground shielding layer with an aperture therethrough (e.g. layer 2 in the image below), for example as shown below in the context of an analysis of an STMicro MEMS microphone sensor (part no. MP45DT01), which was included in this instance in an Apple iPhone 6 Plus.





49.     The embedded microelectronic capacitors of the Accused STMicro Products also include an electrode plate (e.g. layer 1) spaced-apart from the upper ground shielding layer with a via extending upwardly away from the electrode plate through the aperture in the upper ground shielding layer providing electrical communication to the electrode plate without shorting to the upper ground shielding layer. For example, layer 1 in the images below has a via extending upwardly through the second layer to the third layer without shorting to the second layer.







50.    A middle ground shielding layer positioned in the same plane of the electrode plate surrounding while spaced-apart from the electrode plate at a predetermined distance is also found in the embedded microelectronic capacitors of the Accused STMicro Products. For example, the first conductive layer has three electrode plates surrounded by a ground shielding layer in the same plane surrounding while spaced-apart from the electrode plate at a predetermined distance.



51.    Finally, the embedded microelectronic capacitors of the Accused STMicro Products include a dielectric material embedding the upper ground shielding layer and the middle ground shielding layer.





**STMicro's Infringement of the '082 Patent**

52.    The Accused STMicro Products utilize multi-electrode capacitors comprising multiple conducting layers forming a plurality multi-electrode plates (e.g. layers 1 and 4 in the images below), separated by spaces at an interval within, for example as shown below in the context of an analysis of an STMicro MEMS microphone sensor (part no. MP45DT01), which was included in this instance in an Apple iPhone 6 Plus.



53.    The multi-electrode capacitors of the Accused STMicro Products also evidence a plurality of vias connecting with the conducting layers and a plurality of surface-mounted devices, as shown in the images below.







54. Further, one or a plurality of junction points of the vias (e.g. as indicated by the red arrows in the images below) are located at an intersection of the spaces within the plates.





55.     On information and belief, Defendants also implemented contractual controls and protections in the form of license and use restrictions with their customers to preclude the unauthorized reproduction, distribution, and modification of their products.

56.     Moreover, on information and belief, Defendants have implemented and imposed technical precautions to attempt to thwart customers who would circumvent the intended operation of Defendants' products.

## V.     PATENT INFRINGEMENT

### COUNT I — INFRINGEMENT OF U.S. PATENT NO. 6,813,138

57.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

58.     Defendants, without authorization or license from DynaCap, have directly infringed, individually and/or jointly with others, at least claim 1 of the '138 patent, as infringement is defined by 35 U.S.C. § 271(a), in this judicial district and elsewhere in the United States by, among other things, having made, imported, used (including for testing purposes), offered for sale, and/or sold the Accused Apple Products and the Accused STMicro Products that infringe at least claim 1 of the '138 patent. DynaCap alleges that each and every element of at least claim 1 of the '138 patent is literally present in the Accused Apple Products and the Accused

STMicro Products. To the extent not literally present, DynaCap reserves the right to proceed under the doctrine of equivalents.

59.    DynaCap has been damaged as a result of Defendants' infringing conduct. Defendants are thus liable to Plaintiff in an amount that adequately compensates it for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

COUNT II — INFRINGEMENT OF U.S. PATENT NO. 6,969,912

60.    DynaCap incorporates by reference the foregoing paragraphs as if fully set forth herein.

61.    Defendants, without authorization or license from DynaCap, have directly infringed, individually and/or jointly with others, at least claim 1 of the '912 patent, as infringement is defined by 35 U.S.C. § 271(a), in this judicial district and elsewhere in the United States by, among other things, having made, imported, used (including for testing purposes), offered for sale, and/or sold the Accused Apple Products and the Accused STMicro Products that infringe at least claim 1 of the '912 patent. DynaCap alleges that each and every element of at least claim 1 of the '912 patent is literally present in the Accused Apple Products and the Accused STMicro Products. To the extent not literally present, DynaCap reserves the right to proceed under the doctrine of equivalents.

62.    DynaCap has been damaged as a result of Defendants' infringing conduct. Defendants are thus liable to Plaintiff in an amount that adequately compensates it for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

ORIGINAL COMPLAINT

<u>COUNT III — INFRINGEMENT OF U.S. PATENT NO. 7,035,082</u>

63.    DynaCap incorporates by reference the foregoing paragraphs as if fully set forth herein.

64.    Defendants, without authorization or license from DynaCap, have directly infringed, individually and/or jointly with others, at least claim 5 of the '082 patent, as infringement is defined by 35 U.S.C. § 271(a), in this judicial district and elsewhere in the United States by, among other things, having made, imported, used (including for testing purposes), offered for sale, and/or sold the Accused Apple Products and the Accused STMicro Products that infringe at least claim 5 of the '082 patent. DynaCap alleges that each and every element of at least claim 5 of the '082 patent is literally present in the Accused Apple Products and the Accused STMicro Products. To the extent not literally present, DynaCap reserves the right to proceed under the doctrine of equivalents.

65.    DynaCap has been damaged as a result of Defendants' infringing conduct. Defendants are thus liable to Plaintiff in an amount that adequately compensates it for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## VI.    JURY DEMAND

66.    DynaCap demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.    PRAYER FOR RELIEF

67.    WHEREFORE, Plaintiff DynaCap prays for judgment and seeks relief against Defendants as follows:

ORIGINAL COMPLAINT

a.  Judgment that one or more claims of the Patents-in-Suit have been directly infringed, either literally and/or under the doctrine of equivalents;

b.  Award Plaintiff past damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendants of the Patents-in-Suit in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284; and

d.  That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 3, 2025

Respectfully submitted,

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
Daniel L. Schmid
Texas State Bar No. 24093118
**DiNovo Price LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Telecopier: (512) 727-6691
adinovo@dinovoprice.com
dschmid@dinovoprice.com

Winston Huff
Texas State Bar No. 24068745
Kirk Voss
Texas State Bar No. 24075229
**Griffith Barbee PLLC**
1722 Routh St., Ste. 910
Dallas, TX 75201
T: 214.446.6038
winston.huff@griffithbarbee.com
kirk.voss@griffithbarbee.com

**ATTORNEYS FOR PLAINTIFF
DYNACAP LLC**

**ORIGINAL COMPLAINT**